IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STANDARD WASTE SYSTEMS, LTD., | § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:08-CV-0881-N |
| MID-CONTINENT CASUALTY CO., *et al.*, | § § § | |
| Defendants. | § § | |

## ORDER

This Order addresses Plaintiff Standard Waste Systems, Ltd.'s ("Standard") motion for partial summary judgment [14] and Defendants Mid-Continent Casualty Co. ("Mid-Continent") and Oklahoma Surety Co.'s ("Oklahoma Surety") motion for partial summary judgment [18]. Because the Court finds the allegations against Standard in the underlying lawsuit fall within the pollution exclusion of the insurance policy, the Court grants Defendants' motion for summary judgment.[1]

### I. ORIGINS OF THESE SUMMARY JUDGMENT MOTIONS

This action arises out of Oklahoma Surety's refusal to defend Standard in an underlying lawsuit against Standard in the Eastern District of Oklahoma. The underlying action asserted claims for negligence against Standard, J.B. Hunt, and ultimately The Scotts Company based on personal injuries the underlying plaintiffs suffered as a result of exposure

---

[1]The Court also denies as moot Standard's motion to strike Defendants' expert report [16].

ORDER – PAGE 1

to a hazardous chemical that was allegedly present in a trailer J.B. Hunt owned and controlled, and into which Standard had, at some point, loaded commercial waste paper. *See* Underlying First Am. Compl., Ex. C to Pl.'s Br. in Supp. of MSJ [15-4]. The underlying plaintiffs initially sued only J.B. Hunt and its parent company, but amended their complaint to add Standard as a defendant after J.B. Hunt filed a third-party claim seeking contribution from Standard and alleging that Standard's waste paper was the source of the contamination that injured the underlying plaintiffs. *See id.*

Standard brought this action in Texas state court, and Defendants timely removed to this Court. Standard seeks a declaratory judgment that its commercial general liability insurance policy with Oklahoma Surety (the "Policy") obligated Oklahoma Surety to defend Standard in the underlying action. Standard also seeks summary judgment on its claims against Oklahoma Surety for breach of contract and for violation of the Texas Insurance Code.[2] Standard did not move for summary judgment on its claims against Mid-Continent. Defendants filed a cross-motion for summary judgment arguing that the pollution exclusion in the Policy precludes coverage. The pollution exclusion states that the Policy does not apply to:

---

[2]Standard also alleged claims based on promissory estoppel, negligence, and breach of Defendants' duties of good faith and fair dealing. Standard concedes to dismissal of its promissory estoppel claim. *See* Pl.'s Br. in Supp. of Resp. to Defs.' MSJ [26] at 7. Standard has not moved for summary judgment on its claim for negligence or its claim for breach of Defendants' duty of good faith and fair dealing, although Defendants have moved for summary judgment on those claims. *See infra* Part VI.

ORDER – PAGE 2

>    (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":
>    >    (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.
>    >
>    >    * * *
>    >
>    >    (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:
>    >    >    (i)  Any insured; or
>    >    >    (ii) Any person or organization for whom you may be legally responsible[.]

Policy § 2(f), Ex. 2 to Defs.' Br. in Supp. of MSJ [20-4].[3] The Policy further defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." Policy at 15; *id.* at 25.

The various motions for summary judgment turn largely on whether any one allegation in the underlying action may reasonably be interpreted to fall outside of this policy exclusion of claims for certain damages arising from an alleged pollutant.

## II.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that a party moving for summary judgment has the burden of demonstrating that no genuine issue of fact exists and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Harbor Ins. Co. v. Trammel Crow Co.*, 854 F.2d 94, 98 (5th Cir. 1988). The Court is to accept the nonmoving party's evidence and draw all justifiable inferences in its favor

---

[3]These are the only parts of the pollution exclusion on which Defendants rely.

when resolving factual controversies. *Anderson*, 477 U.S. at 255; *see also Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). The Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Conclusory allegations unsupported by specific evidence "are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1220 (5th Cir. 1985).

### III. APPLICABILITY OF THE POLICY EXCLUSION

#### *A. Applicable Law*

Under Texas law, general principles of contract interpretation govern the construction and interpretation of insurance policies. *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003); *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000); *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). Contract interpretation generally is a matter of law for the court to decide. *See Swift Energy*, 206 F.3d. at 491; *CBI Indus.*, 907 S.W.2d at 520. More specifically, the court must determine an insurer's duty to defend an insured as a matter of law by comparing the pleadings to the policy terms. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 531 (5th Cir. 2004). If the Court is unable to give some provision of the policy a definite legal meaning because it is subject to more than one

ORDER – PAGE 4

reasonable interpretation, the policy is ambiguous and Texas law requires the Court to strictly construe the policy against the insurer and in favor of the inured. *Performance Autoplex*, 322 F.3d at 854; *Swift Energy*, 206 F.3d at 491; *Toops v. Gulf Coast Marine Inc.*, 72 F.3d 483, 486 (5th Cir. 1996); *State Farm Fire & Cas. Co. v. Vaughan*, 968 S.W.2d 931, 933 (Tex. 1998). But, "[t]he simple fact that the parties advance conflicting interpretations of the contract does not make it ambiguous." *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998). The Court must construe exceptions or limitations on an insurer's liability even more stringently. *Swift Energy*, 206 F.3d at 491 (citing *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987) (holding court should accept insured's reasonable construction of an exclusionary clause even if insurer's construction seems more reasonable or seems to more accurately reflect the parties' intent)).

In evaluating whether an insurer has a duty to defend an insured, the Court applies the "eight corners" rule, liberally interpreting the allegations in the underlying pleadings in light of the language of the insurance policy. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). The Court must resolve any doubt as to the existence of a duty to defend in favor of the insured. "Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *Id.* (citing *Heyden Newport Chem. Corp. v.*

*S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)).[4]  "The duty to defend is thus broader than the duty to indemnify."  *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 393 (5th Cir. 1995) (citing *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993)).  Of course, if the policy excludes coverage of all the facts alleged in the pleadings, the insurer need not defend the suit.  *Lafarge*, 61 F.3d at 393 (citing *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982)).

However, if any portion of the underlying suit is covered under the policy, the insurer must defend the entire suit.  *See Allstate Ins. Co. v. Disability Servs. of the Sw. Inc.*, 400 F.3d 260, 263–64 (5th Cir. 2005) ("Texas courts will allow claims against an insured to proceed when two separate and independent 'but for' causes of the injury sued on – one excluded under the policy and one not – are involved." (quoting *Travelers Indem. Co. v. Citgo Petrol. Corp.*, 166 F.3d 761, 771 (5th Cir. 1999)); *Lafarge*, 61 F.3d at 393, 395 ("[I]f the plaintiff's complaint alleges multiple claims or claims in the alternative, some of which are covered under the policy and some of which are not, the duty to defend arises if at least one of the claims in the complaint is facially within the policy's coverage."); *see also St. Paul Fire & Marine Ins. Co. v. Green Tree Fin. Corp.*, 249 F.3d 389, 391 (5th Cir. 2001); *Scottsdale Ins. Co. v. Travis*, 68 S.W.3d 72, 75 (Tex. App. – Dallas 2001, pet. denied); *St. Paul Ins. Co. v. Tex. Dep't of Transp.*, 999 S.W.2d 881, 884 (Tex. App. – Austin 1999, pet. denied).

---

[4] But, "'[i]n reviewing the underlying pleadings, the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged.'"  *Nat'l Union* at 142 (quoting *Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 676 (Tex. App. – Houston [14th Dist.] 1993, writ denied)).

ORDER – PAGE 6

### *B. Applicability of the Pollution Exclusion to the Actions Against Standard*

In the claim rejection letters and in the documents presented to the Court in this litigation, Defendants' only basis for arguing that the Policy imposes no duty to defend is that the pollution exclusion precludes coverage of the underlying claims. Accordingly, the outcome in this case chiefly turns on whether the pollution exclusion in the Policy negates any duty Defendants otherwise would have had to defend Standard in the underlying action. Standard was first brought into the underlying lawsuit by J.B. Hunt's third-party complaint. That complaint alleged:

> On or about June 25, 2004, Defendant and Third-Party Plaintiff J.B. Hunt Transport, Inc. picked up a load of waste paper from the Third-Party Defendant, Standard Waste Systems, Ltd. The Third-Party Defendant, by and through its employees and agents, negligently caused and allowed a toxic chemical or substance to be loaded with the waste paper into the Hunt trailer. All of the Plaintiffs' injuries and damages which might be proved were caused by the negligence of the Third-Party Defendant, Standard Waste Systems, Ltd.

App. to Pl.'s Br. in Support of MSJ at 49.

Following the third-party complaint against Standard, the underlying plaintiffs filed their first amended complaint, adding Standard as a defendant and alleging:

> 10. On or about June 25, 2004, an enclosed trailer under the control of J.B. Hunt and previously loaded with scrap paper at Standard Waste Systems, LTD, was delivered by J.B. Hunt employee/driver Daniel Kuder to the Georgia-Pacific paper plant in Muskogee, Oklahoma. The floor of the trailer also contained a hazardous chemical. As the trailer was accessed, unloaded, swept, and its contents otherwise handled, [the underlying plaintiffs] were injured by inhaling or otherwise being exposed to the chemical.
> 11. J.B. Hunt . . . was negligent in the following respects:
> a. Improperly loading, transporting, delivering, inspecting for hazardous cargo spillage and/or generally mishandling hazardous chemicals;
> b. Failing to decontaminate or improperly decontaminating the trailer prior to its delivery to the Georgia-Pacific paper plant;

   c. Failing to warn of the existence of the hazardous chemical to those who would forseeably come into contact with the trailer;
   d. Other acts or omissions to be discovered.
  12. Standard . . . was negligent in the following respects:
   a. Improperly receiving, loading, and/or inspecting the load of waste paper prior to placement into the trailer for transport;
   b. Failing to adequately advise Daniel Kuder of the existence of a chemical in the load of waste paper prior to loading and transport; and
   c. Other acts or omissions to be discovered.

*Id.* at 53-54.

The underlying plaintiffs later amended to add Scotts Company, a fertilizer manufacturer, as another possible source of the hazardous chemical. The second amended complaint alleged:

  12. On or about June 25, 2004, an enclosed trailer under the control of J.B. Hunt and loaded with scrap paper at Standard Waste Systems, LTD, was delivered by J.B. Hunt employee/driver Daniel Kuder to the Georgia-Pacific paper plant in Muskogee, Oklahoma. The floor of the trailer also contained a hazardous chemical, the type of which can be used in certain fertilizers. Prior to the delivery of the wastepaper to Georgia-Pacific, the trailer was used to deliver fertilizer from Scotts Company. As the trailer was accessed, unloaded, swept, and its contents otherwise handled, [underlying plaintiffs] were injured by inhaling or otherwise being exposed to the chemical.
  13. J.B. Hunt, individually, and by and through its employees and/or agents, including Daniel Kuder, was negligent in the following respects:
   a. improperly loading, transporting, delivering, inspecting for hazardous cargo spillage and/or generally mishandling hazardous chemicals;
   b. Failing to decontaminate or improperly decontaminating the trailer prior to its delivery to Georgia-Pacific paper plant;
   c. Failing to warn of the existence of the hazardous chemical to those who would forseeably come into contact with the trailer;
   d. Other acts or omissions to be discovered.
  14. Standard Waste Systems, LTD, by and through its employees, was negligent in the following respects:
   a. Improperly receiving, loading, and/or inspecting the load of waste paper prior to placement into the trailer for transport;

>        b.      Failing to adequately advise Daniel Kuder of the existence of a chemical in the load of waste paper prior to loading and transport; and
>        c.      Other acts or omissions to be discovered.
>        15.     Scotts Company, by and through its employees, was negligent in the following respects:
>        a.      Improperly loading and/or securing the hazardous chemical such that spillage occurred and caused the presence of the chemical.
>        b.      Failing to advise or notify J.B. Hunt drivers of the circumstances pertaining to the presence of the chemical.
>        c.      Other acts or omissions to be discovered.

*Id.* at 60-61. The liability allegations in the third amended complaint were identical to those in the second amended complaint. *See id.* at 67-69.

Standard correctly notes that the underlying plaintiffs are somewhat oblique regarding the source of the contamination.[5] Standard then argues that to the extent the underlying plaintiffs allege that, in the alternative, either J.B. Hunt or Scotts were the source of the chemical, the pollution exclusion would not apply. Standard thus characterizes the complaint as follows:

> 1.    J.B. Hunt was the source of the chemical.
>
> 2.    In the alternative, Standard was the source of the chemical.
>
> 3.    In the further alternative, Scotts was the source of the chemical.
>
> 4.    The negligence of J.B. Hunt, Standard, and/or Scotts caused injury to plaintiffs.

The various complaints, however, do not bear such a reading. It appears to the Court that the underlying plaintiffs allege that Standard was negligent only if Standard was the source of the chemical. The Court would characterize the complaint as follows:

---

[5] J.B. Hunt's third-party complaint, in contrast, is explicit in alleging that Standard was the source of the contamination. That pleading thus falls within the pollution exclusion.

      1.        J.B. Hunt was negligent with regard to the chemical.

      2.        If Standard was the source of the chemical, then Standard was also negligent.

      3.        If Scotts was the source of the chemical, then Scotts was also negligent.

Two facts support the Court's reading. First, none of the various complaints alleges any facts that would support liability on Standard if Standard were *not* the source of the chemical. For example, there is no allegation that Standard employees noticed the chemical in the trailer as they were loading their pristine waste paper and negligently failed to inform Kuder of the presence of the contamination already in the trailer. Second, the liability allegations regarding Standard make sense only in the context of alleging that Standard *was* the source of the chemical. The paragraph b. allegation – failing to warn Kuder of the existence of a chemical in the paper – expressly alleges that Standard was the source of the chemical. The paragraph a. allegation – improperly receiving, loading, and/or inspecting the paper – likewise makes no sense outside the context of the allegation that the paper was contaminated.

Thus, while the Court agrees with Standard that the underlying lawsuit includes alternative allegations that Standard was not the source of the contamination, it does not seek to impose liability on Standard in that alternative. The Court therefore holds that all of the liability theories asserted against Standard in the underlying lawsuit fall within the pollution exclusion in the Policy. The Court grants Defendants' motion for summary judgment on the

coverage claim.[6]  Having found no coverage, of necessity this resolves Standard's Insurance Code and common law claims in favor of Defendants, and the Court grants their motion for summary judgment on those claims as well.  For the same reasons, the Court denies Standard's motion for partial summary judgment.

Signed September 1, 2009.

_____
David C. Godbey
United States District Judge

---

[6] It is unnecessary for the Court to reach the remaining arguments in view of its resolution of this point.

ORDER – PAGE 11